Mr. Clerk. 312-0483, people of the State of Illinois, Abilene, Thomas Dorado v. Edward Williams, appellant by Lucas Walker. Mr. Walker. May it please the Court, Counsel. My name is Luke Walker with the Office of the State Appellate Defender. I represent the appellant in this case, Mr. Edrick Williams. Mr. Williams was convicted after a bench trial of attempted armed robbery and unlawful possession of a weapon by a felon. He was sentenced to 20 years and 15 years, respectively, serving concurrent sentences. Your Honors, our brief rose of four arguments, but for purposes of today, unless you would like to ask questions about the other arguments, which I'd be happy to field, we'd like to focus on the number two and number three arguments. The first of which is that the motion to suppress in this case should have been granted in the lower court, and that's because the tariff risk that officers conducted on Mr. Williams was unlawful, improper, illegal, and therefore the evidence should have been suppressed. The evidence being suppressed, there was no way the State could prove Mr. Williams guilty of either of the charged crimes, and so those convictions need to be reversed outright. The other argument we'll bring up today is that the State failed to prove Mr. Williams guilty beyond a reasonable doubt of the crime of attempted armed robbery, in that they did not prove that Mr. Williams had taken a substantial step towards the commission of that crime. So, as to the tariff risk, tariff risk is a very narrow exception to the Fourth Amendment's protections against unreasonable searches and seizures. It's a very brief protective measure used by officers for protective purposes. That's all. It's an outer pat-down of the clothing, and it's only justified if officers have an objectively reasonable belief that the person they're currently investigating is armed and dangerous and a threat to their safety. That standard was not met here. It's mainly an objective analysis, and objectively it's not met. All the officers knew when they decided to handcuff and frisk Mr. Williams is that his juvenile companion had a pillowcase in his jacket. They knew there had been prior bank robberies in the area, apparently that have occurred sometime in the last several weeks. There's no other details provided as to those robberies, yet they decided to handcuff and frisk Mr. Williams. Now, regardless of whether they suspected him of robbery, that in and of itself, without more to show that he's suspected of being armed and dangerous, is not enough. Now, the state will look to People v. McGowan. People v. McGowan is an Illinois Supreme Court case from 1977 that said some language. It has some language in there that has been used by the state to justify a frisk merely because Mr. Williams is suspected of robbery. That language is essentially somebody engaged in the activities of taking the property of another person likely will be armed, or at least it's unlikely that they will be armed because somebody may strenuously object to the taking of their property. Now, 12 years later in People v. Galvin, Illinois Supreme Court looked at that language directly and analyzed it, and they said that language may not be used by the state as a bright-line rule or to allow a presumption that somebody accused of a specific crime, in those cases they were discussing burglary, the language analyzed was the taking of property from another person because somebody may strenuously object. That language cannot be used to create some presumption that simply suspecting somebody may be engaging in that activity is automatically armed and dangerous. There need to be more objective factors, and those factors aren't here. The state cites to several other cases, but all those cases have something that's not here. Several descriptive factors about somebody who is being pursued by police for armed robbery. And it's important to note that there's no mention of it being considered armed robbery until the officers discover a handgun on Mr. Williams. That, of course, is occurring after the frisk had already begun. In these cases that the state cites to, there's things such as officers looking for somebody who is a certain height, certain weight, a certain race, wearing certain clothing, oh, and by the way, they're suspected of armed robbery. They may have a semi-automatic weapon on them. The officers notice a bulge in people's clothing, giving them a reasonable belief, an objectively reasonable belief that that person may be armed and dangerous. None of that is here. None of it is here. Now, it is mainly an objective analysis, that's true, but subjective considerations of officers are taken into account should they give them. And they are probative and can be considered as part of the analysis. And here, the officers never testified that they believe Mr. Williams is armed and dangerous. To the contrary, officers testified that Mr. Williams was not threatening, that he did not use harsh language, that he did not make any furtive movements or try to flee. So subjectively, objectively, there's just nothing here to point to a lawful tariff risk. And that being the case, the evidence should have been suppressed. And without that evidence, the state has not contested the idea that they have not been able to prove him guilty of either charge at trial. Now, as to attempt armed robbery, for this, we argue that the state did not prove Mr. Williams guilty beyond a reasonable doubt of taking a substantial step towards that crime. Now, attempt armed robberies are difficult to analyze. But we looked at People v. Smith, an Illinois Supreme Court case from 1992, where a man went, the defendant, Mr. Smith, with the admitted intention of robbing a jewelry store and with a gun. Went from Chicago, got on a train in Chicago, took it to the Highland Park train station. Got out of the train there, hopped into a cab, took the cab to Waukegan, went up and down the streets looking for a jewelry store to rob. He found one, but he decided he didn't want to rob that one. So he took the cab back to the train station, at which point he robbed the cab driver of the cab and took off in the cab. Officers found him later. He tried to elude officers. In doing so, he dropped a pillowcase and a gun. As a note, the Illinois Supreme Court did find that pillowcases are not materials specifically designed for the commission of armed robbery. So this was analyzed, and the Supreme Court affirmed the reversal of the conviction for attempt armed robbery as to this jewelry store. The Illinois Supreme Court essentially said that the state had charged Mr. Smith with attempt armed robbery of an undetermined and unnamed store. If there's no substantial step in Smith, there's certainly no substantial step here. Because the state here has essentially charged Mr. Williams with the attempt armed robbery of someplace somewhere around where he is sitting. The state argued it could have been a bank. It could have been the apartments he was sitting in front of. Or it could have been the funeral home. Now, this is in the face of officer testimony that Mr. Williams did not appear to be committing a crime. This is in the face of testimony of officers saying he was never seeing approaching a bank. And that he did not appear to be casing the apartments he sat in front of for a break-in. So simply looking at people v. Smith, the state did not hold their burden here as far as proving that Mr. Williams had taken a substantial step towards committing armed robbery. It certainly was not proven beyond a reasonable doubt. So if you have no questions on those issues, I could touch briefly on our first argument. And the first argument is simply that the officers did not have probable cause to arrest Mr. Williams, but when they handcuffed him, it was an arrest. Now, we look to extensive case law that says, of course, handcuffing is not automatically considered an arrest. But it is considered an arrest if the handcuffing is done and it's not reasonably necessary for the safety of officers at the time. And again, we would simply point to the facts of the case. Mr. Williams was not threatening. This is all officer testimony. Did not appear to be committing a crime. He did not use harsh language. He did not make furtive movements. And so the handcuffing of him simply because he did not consent to this pat-down was not justified for officer safety reasons. And so this was an arrest. And they lacked probable cause. Now, the state has conceded that they lacked probable cause as to the two charged crimes. But they argue, should this court decide to see it as an arrest, that they did have probable cause as to a possible sexual offense. Because it was discovered that Mr. Williams was a registered sex offender, and he was with a juvenile that day. But this was brought up in the lower court. And the lower court took notice of it. And the lower court said, yes, the officer had concerns, but didn't fully understand the law. And so that was that. And as well-established in case law, mere concerns do not rise to the level of probable cause. And that's especially the case where the question is not whether somebody has committed a known crime, but as here, whether somebody has committed a crime at all. So in essence, your honors, we are asking that both convictions be reversed outright, because the motion to suppress in the lower court should have been granted. And if you disagree with that, you would still ask that the attempt armed robbery conviction be reversed, as the state did not prove beyond a reasonable doubt that Mr. Williams had taken a substantial step towards the commission of that crime. I will note briefly that the state does rely on people v. Terrell for the proposition that the state did prove an attempt armed robbery and that a substantial step was taken. But people v. Terrell is easily distinguishable. And they also cite the people v. Burleson and people v. Reyes. All those cases have intended targets. In people v. Terrell, a man was discovered crouching in some weeds outside of a gas station. The man had a gun, and it was around 6.30 in the morning. Police received a call that there's a suspicious man in the weeds with a gun right outside the gas station. Officers approached him. The man leapt up, he ran away, and he leapt over a fence. He ran towards a tool shed and hid in some more weeds. Officers found him. The man admitted, yes, I was going to the gas station, but I just wanted to buy cigarettes. Of course, he didn't have any money on him, but there was an intended target. He admitted, I'm going to that gas station. The other cases they cite are also easily distinguishable. People v. Reyes, people v. Burleson. In people v. Reyes, the defendant admitted that they were going to rob people as they exited a specific drugstore. So there's a target. There's an intended target. And in people v. Burleson, the defendant and another man drove to a bank, got out of their car, one of them holding a white suitcase, the other one holding a loaded shotgun, both wearing disguises, and walked towards a bank. They almost got in except for a quick employee who bolted the door right before they got in. I mean, that's a substantial step towards the commission of the crime of armed robbery. Here, Mr. Williams was simply found sitting on an apartment stoop. Officer testimony never seen approaching a bank. Did not appear to be casing the apartments he's sitting in front of. And upon approach, did not appear to be committing any crime whatsoever. Thank you, Your Honor. Okay, thank you. Mr. Walker and Mr. Arado. Please, the Court. Good afternoon, Your Honors, Counsel. I will address the two primary arguments that counsel has raised, the Terry Frisk and the substantial step towards the attempted armed robbery. As far as Terry Frisk and temporary detainment and pat-down goes, there is more here than just the juvenile having a pillowcase and their being bank robberies. The facts laid out in our brief, we'll go into them a little bit, but the manager or one of the employees of a local funeral home observed the defendant and his companion acting suspiciously, walking, according to a report, walking up and down the street and in between apartments. And then he contacted a police officer who was working at the credit union in order to supposedly protect him from recent bank robberies that had taken place in the area. That was the stated reason why he was actually working at the credit union. The officer reported that to the dispatch or radioed it in, and then Officer Trudeau responded to that dispatch to the scene where he found the defendant and his companion on the stoop of an apartment building. He inquired, do you live here? No, we don't. Do you know anybody who lives here? No, we don't. He ran their information and discovered that the defendant was a registered sex offender and the information given by the companion was that he was a minor. This raised some concern in the defendant or Officer Trudeau's mind about that particular point. And then Officer Wagner arrives and talks to the defendant and the companion and the defendant tells Wagner that he's waiting for a ride, but he cannot tell Officer Wagner who that ride is, only that he drives a Ford Maroon Ford Taurus. No Ford Taurus arrives during any of the time that they are waiting and talking with the defendant. So we have bank robberies in the area, recent rash of bank robberies in the last couple of weeks. We have a defendant and companion being in some place that they don't really have any reason to be. We have a defendant who is a sex offender with a companion who is a minor. We have a consensual pat-down and search of the minor and discover a pillow case. Those factors altogether give an articulable reasonable suspicion of criminal activity in the situation. Mr. Arado, is it suspicious to be some place that you don't live? Under the circumstances of them being observed and walking around up and down and just having no apparent reason for doing anything. So people can't just walk around and not have a fixed purpose? Given the totality of the circumstances, that's what we're concerned about. I'm sorry. Just exactly what is the totality of the circumstances that creates this suspicion? The suspicion is recent bank robberies, defendant and companion having no explanation for why they are there, giving an explanation that, oh they're waiting for Rabbi, I don't know who this person is. That's giving some extra suspicion to what's going on here. A reasonable officer in this situation, and that's what the case law says, would a reasonably prudent person investigate further. And yes, I think that any reasonably prudent person would want the officer to go ahead and inquire further and make a pat-down. When he pats down the companion, that's consensual, he discovers this pillow case. And the judge makes a comment that there's no legitimate purpose for having a pillow case. I think that's at 107 and 108 on the record. And that's during the questioning. What kind of a neighborhood was this? It's not real clear. So there's apartment buildings, and then there's the banks within, I think they said about 100 yards, maybe less than 100 feet from where the apartments are. So it's kind of a mixed... Now there was testimony that there was not a lot of foot traffic near the banks, so that was somewhat, according to the officer, unusual. So that is another circumstance that plays into it. We can't just... If you analyze each thing individually, can somebody be at a stupid apartment without any purpose? Sure, of course they can. Can somebody walk around a neighborhood without any purpose? Sure, of course they can. Can somebody have a pillow case on their person without any purpose? Sure, of course they can. It's when you add all these things up and you realize, hey, this situation appears suspicious. I think it's warranted under the circumstances that we should investigate further. Is it the kind of neighborhood where it was suspicious that they were black? Because there was quite a bit of attention paid to the race. Well, I don't know how much attention is paid. The description of the individuals was African or black males, but that just goes into the description. I'm not sure that there was a lot of questioning about the fact that these were African American individuals. And wearing a hoodie? Again, I don't... There was testimony of the fact that it was not unusual to have a hoodie on in November at this particular time. I mean, I understand Your Honor's concerns, and certainly police targeting of minority individuals is offensive, but there's nothing in this record objectively looking at it to say, hey, we were targeting it. And there's no argument that these were individuals being targeted for their racial profile, essentially. So while Your Honor's concerns are legitimate, I don't think in this particular case you can... And there is no testimony, was this a mixed race neighborhood? Was this a white neighborhood? Was this a minority racially segregated neighborhood? There's nothing in the record to suggest one way or the other on that. So I'm not sure we can perceive just based upon what is said. I mean, descriptions, if you're going to call in a description of an individual, the race of the individual is going to have to be part of that. Unfortunately, you know, if it's two Caucasian males, they'll say two Caucasian males. They don't necessarily say, you know, legitimate, limited to just a particular race or not. So... I guess the thrust of my question is whether they would have been suspicious with what they were doing had they not been black. I would assert our position is yes, they would be suspicious. I mean, I'm not... When I am analyzing this, I'm not analyzing this on the basis of, well, these are young African-American men who are... Therefore, that makes it suspicious. I'm analyzing this on what are the facts of this case? They're bank robberies. It wasn't... Now, as counsel points out, there were not descriptions of the bank robberies provided. So we don't know what the race of the individuals accused of bank robberies were. So we can't point to that. But what is it objectively can we look at? Not what their race is, but what were they doing? What were their physical activities? They were walking around. They were at this stoop. They were creating a suspicion, at least within the minds of this one individual at the funeral. So it could reasonably be said that it didn't matter what they looked like. As far as the finding of the pillowcase is what more or less cemented it in the mind of Trudell, I need to check with defendant, hey, can I search with you? And he says, you can't search me. And then under the facts of this situation, he and the judge finds for officer safety, he decides a pat-down is warranted. And since the defendant is not going to cooperate in a pat-down, the handcuffing is warranted. Now, it is justifiable in general for a defendant to refuse to consent to a search. He didn't consent to the search, and he didn't have to consent. But the combination of the fact that this was a bank robbery and... There was no bank robbery. The bank robberies that were reported in the last two weeks in this area. I mean, at least Trudell's testimony was there was the credit union, the first bank, and another bank that they robbed. So we have multiple history, recent history. I mean, those within the two weeks prior to this situation, because that's what officer Miller testified to, was he had started working at the credit union, and the two weeks prior to that he had been in these robberies. So no, I mean, there was no bank robbery in progress, obviously not. But it is a matter of that is part of the circumstance, and police presence in the area had been beefed up. That was another testimony because of these robberies. So there was heightened suspicion of really anybody who's coming into that neighborhood who does not appear to have a reason for being there. And then when you have, you know, if he doesn't find the pillowcase, we probably don't have him being able to go ahead and pat down the defendant. I think that is really a key factor because the pillowcase, according to Trudell, now he's not real clear, and it was at that point that the judge had interrupted about you don't have to go into it because you don't have a legitimate purpose. But it was at that point Trudell at least suggested that pillowcases had been used. It goes on further on the cross-examination, I believe, that pillowcase be used to put cash in and stuff like that. But the point being that it creates a greater suspicion that this is going to be used in a crime. Defendant himself, now this is later, of course, and this really perhaps goes to the reasonable doubt, admitted that he was looking to commit a crime in the area, a burglary of a house or a car. But that's not what we have to look at as far as this point goes. That's the last two minutes. Okay. As far as McGowan goes, yes, in Galvin, the court sort of limited language in McGowan, but it only said that this is not a hard and fast rule. What we're trying to use with McGowan is to analogize that case and say it's reasonable to believe that defendants were suspected of bankruptcy. And that was a burglary. This is a suspected possibly being involved in a bank robbery is going to be armed. So as far as the limitation language that the Supreme Court used, as far as McGowan goes, we acknowledge that that is limited, but the court simply said it's not a hard and fast rule. It didn't reject that outright. It says it's a case-by-case basis that you have to analyze these things. Just briefly on the reasonable doubt, that means I don't have much time, there's a continuum between mere preparation and attempt. Those cases that we cite are for those propositions, and Terrell is really close. And the court in Terrell noted that defendant had offered a litany of possible targets, and the court there said that you don't have – it was reasonable to reject that notion that just because there's other possible targets doesn't mean that he wasn't targeting a bank. I'm sorry, the convenience store or whatever that was. What was the target in this case? In this case, well, the target in this case, the judge did not specifically say it was a credit union or it's the bank, but he said it was reasonable to believe that it was one of those targets. So he did not specify, but he believed that it wasn't necessary. Under Terrell, they suggest that you don't necessarily have to have a specific target because you're making the attempt towards it. So he's making an attempt to A, B, or C? Correct. He hasn't made a final choice yet. With all the same locale, so you're standing there and there's A, B, and C and so forth. That's essentially what the trial judge was finding, that he doesn't have to say it was this particular bank. There's no way to tell all of them in a row, so it's hard to say that the next one is going to be a repeat pattern or what have you. How close do you have to be to the three to jump into that presumption? Within reasonable striking distance, I would suggest. Because, as we said, there's a continuum. There's mere preparation. These gentlemen were found with masks, gun, and pillowcases. That does not suggest burglary, as the defendant claimed in his interview afterwards. That suggests an armed robbery. So I would say that we're on a continuum. Here's the actual committing of the crime. Here's the walking up to it. Here's the deciding what your target is. Under the model penal code, you don't necessarily have to have a specific target. Indeed, the law is, generally speaking, it's not a defense to say that your ultimate target wasn't the one that you ended up robbing. We're not talking about defense now. We're talking about the offense, the elements of the offense. Correct. So I would say that, as far as continuum goes, we're, I don't know, 70, no, 85% close. That's close enough. What's the purpose of our attempt clause? It's to discourage dangerous individuals and to discourage violent or dangerous conduct. So for the elements of the attempt that you're talking about, what did we have here? We had a bag, pillowcase. Correct. That's a substantial step towards the commission of an armed robbery because those are tools of use. The model penal code talks about having tools or elements, items to be used in a commission of offense that corroborates the mental state of an attempt. If they were in the apartment, if they were in an apartment and they were with those bags, would that be an attempt to robbery of the apartment? Of that apartment? That they find them in. Well, if there's somebody in the apartment, yes. May I follow up on a, are you talking about their own apartment or somebody else's apartment? Somebody else's apartment. If they're present, then it's a robbery. If they're not present, it's a burglary. You mean if the victim is present? Sorry, what? If the victim is present. If the victim is present, right. If they have a gun in their bag. Sure.  Under the model penal code, it's reasonable to believe that individuals are going to commit a crime based upon the possession of materials employed in the commission of the crime for the concerned unlawful purpose or the act of the circumstances. And they don't have any unlawful purpose to be in the apartment, so therefore you find them in the apartment, they got the bag. Now we're saying that that same thing applies to when they're outside three buildings. And that's why we have... A block away, half a block away. Well, you know, in Terrell, they weren't near, they were outside of the place. They weren't going in. But there was other evidence saying where they were going, right? Well, he said he was going there to buy cigarettes. But he was going someplace. True. He had a purpose of going someplace, and he had these other accoutrements of criminal activity, right? True. And so therefore, they tied all that together. But here, you have the pillowcase, the gun, and perhaps three different spots. Or more. True. Or more, because he mentioned, I think, the funeral home as well. The... And that's why I would point to Terrell, which rejected the defendant's argument that, look, there's multiple targets that are possible here, and therefore you can't just say it was this target. I understand the Honor's point about, you know, he said I was going to the... But maybe that wasn't his target. Maybe he was going to go someplace. So that's what tied him into the conviction in that case. Well, it certainly helped. Is it your argument that just being in possession of the tools is a substantial step? He admitted towards... In this case, he admitted that his intent was to commit a crime. Burglary of a house or a car. It was free, as a matter of fact, to reject his argument that that was his purpose. That his crime was, in fact, intent to commit a robbery. And what is it that makes this beyond a reasonable doubt? I mean, that's just speculation on the part of the judge, isn't it? Well, it's speculation to an extent as far as what's his target. If somebody is sitting in a park, I don't know, at the apartment, and they're just sitting there waiting for somebody to come home to rob them, and they... But the person that they want to rob doesn't show up. But another person comes, and they want to rob them instead. Can we arrest them? At what point can we arrest them? Can we arrest them at the point that they are actually robbing them? Do they have to pull out the gun and point it at the individual and say, Okay, it's our property. Now we can arrest you. No, that's why we pull back the time to determine what was the mental state of this individual. That's really what we're getting to. Does he have the intent to commit an armed robbery? Yes, he does. Do we have to know what the ultimate target is? No, we don't. See, I'm really not totally bothered by the intent factor. What I'm thinking of, in an intent robbery, you have to have an element of a substantial step toward completion. That's sometimes been defined as dangerous proximity to them. So how is that in this case? How do you have the substantial step factor element? Well, you have to infer from the surrounding circumstances. If you find somebody on the street with a gun and a mask and a pillowcase, and there are robberies that have been taking place within the vicinity of that, it is reasonable to infer that these are people who will be targeting it. Now, there's no evidence that these individuals were, in fact, the ones who robbed the bank before. Obviously, that would have been much more helpful. What I'm talking about is dangerous proximity to successfully rob something. That's an element, isn't it, of the attempt? True. I guess the question is, where are we on this continuum? I mean, is this mere preparation? Because that's what you have to find, that they were merely preparing to make a robbery. I mean, we're talking about attempt here, not conspiracy. True. We're not dealing with conspiracy. No, no, no, we're not. But you have to have, you know, you still have mere preparation still doesn't qualify for an attempt. So are you closer to attempt or are you closer to mere preparation in this case? We are arguing that it's much closer to an attempt. It is an attempt because it's a substantial step rather than mere preparation. I should rephrase that. Mere preparation versus substantial step. Well, what's the dangerous proximity to success in this case under these means? We would suggest that if the police had not intervened, the robbery would have taken place. I don't know, what are the factual matters that indicate a dangerous proximity to success in a robbery? The fact that they were retinal entering the area, supposedly, you know, walking up and down, and then go back to this apartment. They have a gun, they have masks, and these were covering your face masks. Yeah, I mean, they have all that. They have all that. They have the gun, they've got the mask, and he even says that they were going to rob something, although he talks about apartment, cars and stuff. Correct. So he's making, he admits he's going to attempt a crime. Do we have to accept the fact that he's attempting only a burglary, or can we reject that and say it was actually a robbery? And given the fact there are no burglary tools, I believe that might be Terrell. Anyway, that goes to the fact that you can reject their assertion. I'm admitting I'm going to commit a crime. I'm just not going to commit this crime. Oh, yeah? Well, based upon the facts here, the tools that you have, these are tools for armed robbery and not for burglary. I mean, why wear a mask if I have a gun to burglarize a car? I see I'm way out of time. Well, we can actually authorize a few more minutes here. Thank you, Mr. Arado. Thank you very much. Mr. Walker? Just briefly. Your Honors, first I did notice, you know, it seemed the counsel described a lot of innocent behavior and then came to the conclusion that when there's a lot of innocent behavior, we can reasonably suspect you of a crime. Well, sometimes a lot of behavior joined together is no longer innocent. Well, here, Your Honor, there's simply nothing to indicate that Mr. Williams, as the officer's own testimony indicates, did not appear to be committing any crime whatsoever. I also want to stress there is a difference between People v. McGowan and the current case as well. In McGowan, which is where the language that the state relies on originates, in McGowan two officers stopped two African-American gentlemen at 12.50 a.m. The men were wearing all black in an area that had been plagued by burglaries. Officers in that case testified that it hadn't been months, it hadn't been weeks, it hadn't even been days, it had been hours since the last burglary. The men were walking in a deserted commercial lot towards the only open business at that time, a tavern. It was open for 10 more minutes. The officer stopped and frisked the men. In that case, McGowan said that was lawful. And it originated the language of if somebody's, you know, it's not unlikely that someone's going to be armed if they're engaging in the behavior of taking someone's property because someone may strenuously object to that. Galvin looked directly at that language, looked directly at McGowan, and said no such hard and fast rule may exist. You cannot simply presume somebody is armed and dangerous and therefore frisk them simply because you suspect them of that type of activity. And look at the facts of McGowan. It's not 12.50 a.m. in Mr. Williams' case. It's 12.30 in the afternoon. He's not dressed in all black. He's dressed appropriately for the weather. Officers testified it's not unusual to see somebody wearing hoodies in February. He never tried to cover his face. There was not only one business open at that time of day, and it wasn't an area where the officers testified it had been mere hours since the last bank robbery. The facts are simply not comparable. Here there was no reason for officers to have a, well, there is no objectively reasonable belief that Mr. Williams was armed and dangerous, and therefore that frisk was clearly unwarranted. Now I also want to touch just briefly on the model penal code factors. We're going to stand again on People v. Smith, Illinois Supreme Court, that analyzed the model penal code factors in depth and applied them towards the Smith case and distinguished that case from Terrell, from Burleson, and from Reyes. And it is very clear, the Illinois Supreme Court has held, that there's not an intended target. You can't simply charge someone with attempt armed robbery of someplace somewhere around you. And the model penal code factors do not say reconnoitering the area that you may commit a crime in. It says reconnoitering the place contemplated for the commission of the crime. It says lying in wait for the intended victim or place contemplated for the commission of the crime. It's just not here. So it's not a matter of where is he on the continuum. He's not on the continuum until he has taken a substantial step. And based on People v. Smith, that has not happened here. So with that, your honors, thank you for your time. Thank you, Mr. Walker. Thank you both for this very interesting argument today, and I think you both did a good job presenting your cases. I will now adjourn for the evening, and we'll start again at 9 o'clock in the morning.